**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

JOEL FIGUEROA RODRIGUEZ,

    Plaintiff,       Case No.: 3:26-cv-00986

v.            **JURY TRIAL DEMANDED**

EXPERIAN INFORMATION SOLUTIONS,
INC., EQUIFAX INFORMATION
SERVICES, LLC, and TRANS UNION LLC

    Defendants.

## COMPLAINT

Joel Figueroa Rodriguez ("Plaintiff") respectfully brings this case against Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union LLC (collectively, "Defendants") and states as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA" or the "Act").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p based on the federal question concerning the FCRA, a federal law.

3. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because the acts or omissions giving rise to the complaint pled to here occurred within the District of Connecticut.

## PARTIES

4. Plaintiff resides in New Britain, Connecticut and qualifies as a "consumer" as defined and protected by the FCRA.

5.    Equifax is a consumer reporting agency with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

6.    Experian is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California.

7.    Trans Union is a consumer reporting agency with a principal place of business located at 2 Baldwin Place, Chester, PA 19022.

## FACTUAL ALLEGATIONS

8.    Plaintiff was born and raised in the Commonwealth of Puerto Rico.

9.    Plaintiff was incarcerated nearly continuously from 1999 through 2021.

10.    He was first incarcerated as a juvenile in 1999 and remained in custody until 2003.

11.    After being released in or about 2004, he was arrested again shortly afterward and remained in custody until 2012.

12.    He was then released for approximately two (2) weeks before being incarcerated again and stayed in prison until 2016.

13.    He was thereafter released again in 2016 but returned to prison in 2018, where he remained until 2021.

14.    After Plaintiff's release from incarceration in 2021, Plaintiff sought to reintegrate into society and establish a stable and productive life.

15.    Like many individuals attempting to rebuild after a lengthy period of incarceration, Plaintiff focused on obtaining lawful employment, maintaining stable housing, and addressing the practical challenges associated with reentering the workforce.

16.    Plaintiff had limited financial resources and was attempting to establish himself through legitimate employment and lawful means.

17.     In or around 2021, after securing employment, Plaintiff filed his tax return.

18.     Plaintiff anticipated receiving a tax refund that would assist him in meeting his living expenses and continuing his efforts to establish financial stability.

19.     Instead, Plaintiff learned that his anticipated tax refund had been intercepted and applied toward debts allegedly owed by him that he did not recognize.

20.     The debts were unfamiliar to Plaintiff, and he had no recollection of opening the accounts or incurring the obligations that purportedly gave rise to those debts.

21.     In fact, although he was certain that the accounts were not his, he went about the process of ascertaining what transpired so he can be sure.

22.     Plaintiff thus began investigating the source of the debts and financial obligations being attributed to him.

23.     On or about February 1, 2024, Plaintiff received a debt collection letter from FMA Alliance ("FMA") dated January 24, 2024, seeking payment on a debt on behalf of Upstart Asset Trust I, serviced by Upstart Network, Inc. ("Upstart") and account number XXXX9237.

24.     Plaintiff attempted to open an account with Defendant Experian but was denied by Experian's system.

25.     On or about June 24, 2025, Plaintiff created online consumer accounts with Defendants Equifax and Trans Union for the purpose of reviewing the information being reported about him.

26.     Through those accounts, Plaintiff obtained copies of his credit reports.

27.     Upon review, Plaintiff discovered that his consumer reports contained numerous credit accounts, automobile loans, charge accounts, collection accounts, addresses, telephone numbers, and other personal identifying information that he did not recognize.

3

28.    Specifically, Defendants Equifax and Trans Union reported one or more of the

following accounts (the "Disputed Fraudulent Accounts") as belonging to Plaintiff:

a.  CREDIT ONE BANK
    Account Number: XXXXXXXX8904
    Date Opened: 11/08/2021
    Account Type: Credit Card
    Balance: $1,432

b.  CAPITAL ONE BANK USA, N.A.
    Account Number: XXXXXXXX9679
    Date Opened: 12/06/2022
    Account Type: Credit Card
    Balance: $205

c.  BRIDGECREST CREDIT COMPANY, LLC
    Account Number: XXXXXXXX8201
    Date Opened: 04/04/2024
    Account Type: Auto Loan
    Balance: $21,884

d.  TBOM MIL
    Account Number: XXXXXXXX4675
    Date Opened: 11/25/2022
    Account Type: Credit Card
    Balance: $309

e.  JEFFERSON CAPITAL LLC
    Account Number: XXXXXXXX9044
    Date Opened: 12/20/2021
    Account Type: Debt Buyer Account
    Balance: $3,335

f.  MERRICK BANK
    Account Number: XXXXXXXX1150
    Date Opened: 02/12/2017
    Account Type: Credit Card
    Balance: $3,411

g.  TD BANK USA/TARGET CREDIT
    Account Number: XXXXXXXX9165
    Date Opened: 10/05/2013
    Account Type: Credit Card
    Balance: $0

h.  CAPITAL ONE/KOHLS DEPARTMENT STORE
Account Number: XXXXXXXX9165
Date Opened: 10/05/2013
Account Type: Credit Card
Balance: $0

i.  COVINGTON CREDIT
Equifax Account Number: XXXXXXXX1307
Trans Union Account Number: XXXXXXXXXXXX0295
Date Opened: 02/23/2017
Account Type: Note Loan
Balance: $0

j.  TOYOTA MOTOR CREDIT CORPORATION
Account Number: XXXXXXXX0001
Date Opened: 03/24/2021
Account Type: Auto Loan
Balance: $0

k.  GM FINANCIAL
Account Number: XXXXXXXX8313
Date Opened: 02/06/2016
Account Type: Auto Loan
Balance: $0

l.  CAPITAL ONE AUTO FINANCE
Account Number: XXXXXXXX 3290
Date Opened: 05/10/2016
Account Type: Auto Loan
Balance: $0

m.  WELLS FARGO BANK, N.A.
Account Number: XXXXXXXX0001
Date Opened: 11/10/2012
Account Type: Auto Loan
Balance: $0

n.  BARCLAYS BANK DELAWARE
Account Number: XXXXXXXX7851
Date Opened: 10/19/2011
Account Type: Credit Card
Balance: $0

o.  FINGERHUT/WEBBANK
    Account Number: XXXXXXXX5260
    Date Opened: 05/11/2013
    Account Type: Charge Account
    Balance: $0

p.  BEST BUY/CBNA
    Account Number: XXXXXXXX7064
    Date Opened: 10/11/2017
    Account Type: Credit Card
    Balance: $0

q.  AARON RENTS
    Account Number: XXXXXXXX2179
    Date Opened: 05/01/2014
    Account Type: Lease Account
    Balance: $0

r.  WAKEFIELD & ASSOCIATES, INC.
    Account Number: XXXXXXXX8195
    Original Creditor: Southeastern Emergency
    Balance: $761

s.  CREDIT ONE BANK
    Account Number: XXXXXXXX0025
    Date Opened: 10/29/2019
    Account Type: Credit Card
    Balance: $806

t.  CREDIT ONE BANK
    Account Number: XXXXXXXX9134
    Date Opened: 10/29/2019
    Account Type: Credit Card
    Balance: $806

29.    Plaintiff did not open, authorize, use, or receive the benefit of any of the foregoing accounts.

30.    Equifax reported the address "2105 Gardenia Avenue, Hidalgo, Texas 78557" as Plaintiff's address, along with former addresses in Connecticut, Louisiana, Kentucky, North Carolina, and Tennessee, all of which Plaintiff did not recognize.

31.    Trans Union likewise reported the address "2105 Gardenia Avenue, Hidalgo, Texas

6

78557-3627" as Plaintiff's current address, along with numerous other addresses in Kentucky, North Dakota, Tennessee, Massachusetts, Puerto Rico, Connecticut, Texas, and North Carolina, none of which Plaintiff recognized.

32.     Similarly, Trans Union reported the following numbers that never belonged to Plaintiff: (774) 240-3145, (813) 841-1116, (701) 641-3343, (701) 580-4334, (701) 641-8840, (508) 406-8882, (701) 648-9398, (774) 386-3937, (214) 364-7434, and (423) 310-6069.

33.     Understanding that he was likely the victim of identity theft, on or about July 14, 2025, Plaintiff filed an incident report with the New Britain Police Department concerning the apparent misuse of his identity.

**Plaintiff Contacts the Furnishers**

34.     In July and August 2025, Plaintiff called many of the furnishers appearing on his credit report.

35.     Each of the furnishers confirmed that while Plaintiff's name and other personal identifying information was associated with the respective accounts, the addresses and telephone numbers associated with the accounts did not belong to Plaintiff, a telling sign of identity theft.

36.     Further, on some accounts, Yadira Rodriguez and Joel F. Rodriguez were listed as joint accountholders.

37.     However, Plaintiff does not know these individuals.

38.     Plaintiff confirmed that he never authorized or benefitted from these accounts.

39.     On or about September 24, 2025, Plaintiff filed an Federal Trade Commission ("FTC") Identity Theft Report.

**Plaintiff's Formal Disputes with the Defendants**

40.     On or about September 24, 2025, Plaintiff disputed the Disputed Fraudulent

Accounts, inaccurate addresses, inaccurate telephone numbers, and unauthorized inquiries with each Defendant.

41.     Specifically, Plaintiff disputed that the Fraudulent Accounts were not his, but rather the product of fraud and identity theft.

42.     Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

43.     Plaintiff requested that the identity theft information be blocked from his credit file.

### Experian and Equifax Ignore Plaintiff's Dispute

44.     Upon information and belief, on or about October 5, 2025, Equifax and Experian received Plaintiff's September 24, 2025 dispute and request that the identity theft information be blocked from his credit file.

45.     Plaintiff did not receive any response from Equifax or Experian.

46.     Upon information and belief, Equifax and Experian failed to adequately review all the information provided to it by Plaintiff.

47.     Upon information and belief, Equifax and Experian failed to reinvestigate Plaintiff's September 2025 dispute and failed to block identity theft information.

48.     Equifax and Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

49.     Equifax and Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Trans Union's Unreasonable Dispute Reinvestigation

50.     Upon information and belief, on or about October 6, 2025, Trans Union received

Plaintiff's September 29, 2025 dispute and request that the identity theft information be blocked from his credit file.

51.    On or about October 7, 2025, Trans Union issued correspondence to Plaintiff declining his fraud block request, without specifying a reason or justification under § 1681c-2.

52.    Trans Union stated that it would reinvestigate the disputed information but never provided its results.

53.    On or about October 7, 2025, Trans Union issued additional correspondence stating that Plaintiff's proof of address was unacceptable.

54.    Plaintiff's dispute included his current driver's license as well as an FTC sworn affidavit and police report listing the same address.

55.    Notwithstanding, the Disputed Fraudulent Accounts were not removed or blocked from his credit file by Trans Union.

56.    Upon information and belief, Trans Union failed to adequately review all the information provided to it by Plaintiff.

57.    Upon information and belief, Trans Union failed to reinvestigate Plaintiff's September 2025 dispute and failed to block the identity theft information.

58.    On or about October 16, 2025, Plaintiff mailed a second identity theft dispute and block request to Defendant Trans Union.

59.    On or about October 31, 2025, Defendant Trans Union received Plaintiff's October 2025 dispute.

60.    Regrettably, Trans Union provided the same exact response, failing to specify why it would not block the information.

61.    This time, however, Trans Union did not require additional proof of address.

9

62. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

63. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Plaintiff Sends Another Dispute to the Defendants

64. On or about November 20, 2025, Plaintiff mailed another identity theft dispute and block request to each of the Defendants.

65. Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

66. Plaintiff requested that the identity theft information be blocked from his credit file.

### Trans Union's Unreasonable Dispute Reinvestigation

67. On or about November 28, 2025, Trans Union received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

68. On or about December 30, 2025, Trans Union issued investigation results to Plaintiff.

69. Trans Union reported that several disputed accounts had been deleted from Plaintiff's credit report.

70. However, Trans Union continued to report several other fraudulent accounts.

71. Trans Union removed many disputed addresses but failed to remove 314 McTavish Avenue, White Earth, North Dakota 58794-5003.

72. Trans Union failed to adequately review all the information provided to it by Plaintiff.

10

73. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

74. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Equifax's Unreasonable Dispute Reinvestigation

75. On or about November 28, 2025 Equifax received another dispute from Plaintiff.

76. On or about December 6, 2025, Defendant Equifax issued multiple responses to Plaintiff concerning his November 2025 dispute.

77. In one response, Equifax characterized certain disputed items as frivolous because Equifax claimed that the items had already been disputed within the prior ninety (90) days, had previously been verified as accurate, and no new relevant information had been provided.

78. Equifax also identified Barclays Bank Delaware, Wells Fargo Bank, N.A., and GM Financial as items it considered previously disputed and verified.

79. Equifax further stated that other disputed items were already under active dispute, including accounts associated with Capital One Bank USA, Merrick Bank, Credit One Bank, Capital One Auto Finance, Bridgecrest Credit Company, and Fingerhut/WebBank.

80. In a separate response dated December 6, 2025, Equifax stated that Plaintiff's identification information did not match the information in his credit file (which, ironicially, was the precise reason for Plaintiff's dispute) and requested additional documentation to verify Plaintiff's identity and current address.

81. In another response dated December 6, 2025, Equifax stated that it would not block the disputed information at that time pursuant to Section 605B(c) of the FCRA.

82.     Equifax failed to adequately review all the information provided to it by Plaintiff.

83.     Equifax failed to reinvestigate Plaintiff's November 2025 dispute and failed to block the identity theft information.

84.     Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

85.     Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Experian Ignores Plaintiff's Dispute Again

86.     On or about November 20, 2025, Experian received from Plaintiff another dispute that identity theft information be blocked from his credit file.

87.     Despite receiving Plaintiff's second written dispute and supporting documentation, Plaintiff did not receive any response from Experian, again violating its FCRA obligations.

### Defendants Continue to Report the Inaccurate Information

88.     On or about January 6, 2026, Plaintiff obtained updated credit reports to determine whether the disputed identity theft information had been blocked, deleted, or corrected.

89.     Plaintiff's updated Equifax report showed that Equifax had removed many disputed accounts.

90.     However, Equifax continued reporting numerous disputed accounts with Credit One Bank, Barclays Bank Delaware, Wells Fargo Bank, N.A., and Toyota Motor Credit.

91.     Equifax also began reporting a new LVNV Funding LLC collection account with WebBank/Fingerhut that did not belong to Plaintiff.

92.     Similarly, Plaintiff's updated Trans Union report showed that Trans Union had

removed many disputed accounts.

93. However, Trans Union continued reporting disputed accounts with Covington Credit and Toyota Motor Credit.

94. Trans Union also began reporting new accounts with Credence Resource Management and LVNV Funding, which Plaintiff also disputed.

95. Plaintiff's updated Experian report showed that Experian had removed several previously disputed accounts.

96. However, Experian continued reporting disputed accounts with Barclays Bank Delaware, Fingerhut/WebBank, and Wells Fargo Bank, N.A.

97. Experian also reported the following new accounts: Credence Resource Management, DRS, and Resurgent/LVNV Funding that did not belong to Plaintiff.

98. On or about January 14, 2026, Plaintiff completed another FTC Identity Theft Report after discovering additional accounts and information that he did not recognize.

**Plaintiff Disputes Again**

99. Because the disputed identity theft information had not been fully blocked or corrected, in March 2026, Plaintiff again disputed the inaccurate information with the Defendants.

100. Plaintiff disputed the inaccurate information listed above with each respective Defendant.

101. Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

102. Plaintiff requested that the identity theft information be blocked from his credit file.

103. Plaintiff did not receive any response from Trans Union, Experian, or Equifax to his March 2026 disputes.

**PLAINTIFF'S DAMAGES**

104. Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

105. Plaintiff disputed directly with the furnishers and explained that the Disputed Fraudulent Accounts were fraudulently opened and that he was the victim of identity theft.

106. Plaintiff filed a police report.

107. Plaintiff filed an FTC ID Theft Report.

108. Plaintiff filed formal disputes with each Defendant multiple times throughout 2025 and 2026.

109. Plaintiff immediately identified himself as an identity theft victim and requested that the Defendants block the account information that was the product of identity theft.

110. Defendants failed to block the Disputed Fraudulent Accounts that were the product of identity theft despite Plaintiff's multiple formal disputes.

111. Instead, Defendants repeatedly disregarded Plaintiff's credible disputes, often responding to a victim of identity theft that the furnisher of the fraudulent account verified the account as accurate, when that was not so.

112. Defendants refused to block the information, despite their statutory obligations.

113. Plaintiff was forced to retain counsel, for which he incurred attorneys' fees.

114. Plaintiff expended countless hours attempting to correct these inaccuracies.

115. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety.

116. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his formal disputes.

117. At all relevant times, Defendants were acting by and through their agents, servants,

14

and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

118.    At all relevant times, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

119.    Plaintiff has suffered ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time he receives another communication from Defendants.

120.    His ongoing stress and anxiety regarding the situation have affected his and his relationships negatively.

121.    Further, Plaintiff lost credit opportunities.

122.    For example, on or about February 8, 2026, Plaintiff applied for a OnePay CashRewards credit product issued by Synchrony Bank.

123.    Plaintiff's application was denied after Synchrony Bank reviewed information contained in Plaintiff's Trans Union credit report and credit score.

124.    As another example, on or about February 18, 2026, Plaintiff applied for a Chase Freedom Visa Platinum account.

125.    Plaintiff's application was denied after Chase reviewed information contained in Plaintiff's Experian credit report and cited the existence of one or more unpaid collection accounts.

126.    As yet another example, on or about February 19, 2026, Plaintiff applied for a Citi Double Cash Mastercard.

127.    Plaintiff's application was denied after Citibank reviewed information contained in Plaintiff's Equifax credit report and cited delinquent credit obligations, collection activity, and

15

excessive outstanding obligations.

128.    Plaintiff also applied for a Wells Fargo Active Cash Visa Card and was denied credit.

129.    Plaintiff further attempted to obtain financing through FlexShopper but was unable to proceed with the application process because of the inaccuracies in his credit files.

130.    As a result of the continued reporting of inaccurate and identity-theft-related information, Plaintiff lost opportunities to obtain credit products for which he otherwise sought consideration.

131.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

### COUNT I
### Violations of 15 U.S.C. § 1681e(b)
### (Against All Defendants)

132.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

133.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." See 15 U.S.C. § 1681e(b).

134.    On numerous occasions, Defendants prepared patently false consumer reports concerning Plaintiff.

135.    Despite actual, apparent, and implied knowledge and evidence that Plaintiff was

16

the victim of identity theft, Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness, by suggesting that Plaintiff had accounts that he was delinquent on at least one occasion.

136.    Each Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

137.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages as alleged herein.

138.    Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### Violations of 15 U.S.C. § 1681i
### (Against All Defendants)

139.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

140.    The FCRA mandates that a credit reporting agency ("CRA") conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).

141.    The Act imposes a thirty (30) day limitation for the completion of such an investigation. Id.

142.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

17

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

143.   On numerous occasions in 2025 and 2026, Plaintiff disputed the inaccurate information with Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to his, namely, the Disputed Fraudulent Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

144.   Plaintiff disputed the identity theft information to Defendants several times to no avail.

145.   Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

146.   Despite actual, apparent, and implied knowledge and evidence that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, each of the Defendants conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

147.   Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with Defendants, repeatedly.

148.   Defendants' repeated refusals to block the Disputed Fraudulent Accounts provided false credibility to those accounts, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

149.   Each Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day

18

period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

150.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages as alleged herein.

151.    Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorneys' fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Violations of 15 U.S.C. § 1681c-2**
**(Against All Defendants)**

152.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

153.    Each Defendant violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

154.    Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.  Plaintiff further supported the fact that he was an identity theft victim by providing to the Defendants copies of the Police Report and FTC IDT Report.

155.    Defendants should have blocked the identity theft information but failed to do so at every turn.

156.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages as alleged herein.

157.    Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's

fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully demands a jury trial on all issues so triable.

Dated: Flushing, New York
      June 22, 2026                      **CONSUMER ATTORNEYS PLLC**

                                 */s/ Emanuel Kataev, Esq.*
                                 Emanuel Kataev, Esq.
                                 6829 Main Street
                                 Flushing, NY 11367-1305
                                 (718) 412-2421 (office)
                                 (718) 489-4155 (facsimile)
                                 ekataev@consumerattorneys.com

                                 *Attorneys for Plaintiff*
                                 *Joel Figueroa Rodriguez*